**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re  Case No. 06-10125-WRS
 Chapter 13
WILLIAM LOVE
GLORIA LOVE,

      Debtors

## MEMORANDUM DECISION

This Chapter 13 case came before the Court for a hearing on confirmation of the Debtors' Plan on June 7, 2006. The Debtors were present by counsel Michael Brock and Chapter 13 Trustee Curtis C. Reding was also present. The Chapter 13 Trustee objects to confirmation contending that the Debtors' Plan fails to pay all of their projected disposable income. (Doc. 27). The Court heard argument of counsel and briefs have been filed. (Docs. 35, 37). For the reasons set forth below, the Trustee's objection is SUSTAINED. The Court will not confirm the plan as filed. The Court will, by way of a separate order, require the Debtors to file and serve an Amended Chapter 13 Plan not later than 30 days after the date of this Order.

## I. FACTS

The Debtors, William and Gloria Love, filed a joint petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on February 21, 2006. The Loves filed a Plan at the same time. (Doc. 2). At the time the Loves filed their petition, they owned two mobile homes and three lots. (Doc. 1, Schedule A). In addition, the Debtors own two pickup trucks (a 1994 GMC Sonoma and a 2005 Chevrolet Colorado), a motorcycle and some furniture, all of which encumbered by secured indebtedness owed to several creditors. The Debtors propose to keep the

Chevrolet Colorado pickup truck and surrender all of the remaining collateral. The Plan proposes that $133 be paid weekly to the Chapter 13 Trustee for 60 months. This will pay the indebtedness owed on the Chevrolet pickup truck and the administrative expenses, but nothing to the holders of unsecured claims.

Referring to the Debtors' "Statement of Current Montly Income and Calculation of commitment Period and Disposable Income" (Form B22C), the Debtors' "current monthly income, or CMI, is $4,257.47. (Doc. 6). The Debtors report total allowable deductions of $4,810.84 and disposable income of zero. The deductions include $1,573.03 for payments on secured debt, most of which will be avoided by the surrender of collateral.

## II. CONCLUSIONS OF LAW

This Chapter 13 case is before the Court on the Trustee's objection to confirmation of the Plan. This Court has jurisdiction to hear this case pursuant to 11 U.S.C. § 1334. This is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(L).

### A. PROJECTED DISPOSABLE INCOME

The Trustee's objection is based upon 11 U.S.C. § 1325(b)(1), which provides as follows:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
> (A) the value of the property to be distributed under the plan on account os such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected

2

Case 06-10125    Doc 43    Filed 08/31/06    Entered 08/31/06 20:07:50    Desc Main
            Document    Page 2 of 10

>disposable income to be received in the applicable commitment
>period beginning on the date that the first payment is due under the
>plan will be applied to make payments under the plan.

Simply put, this provision requires that the plan either pay all creditors in full, or that the debtor pay all of his projected disposable income over the life of the plan. In this case, the Debtors' plan does not propose to pay unsecured creditors anything, therefore they must pay all of their disposable income over the applicable commitment period.

To dispose of a point which is not in dispute, the applicable commitment period here is 60 months. If a debtor's current monthly income is more than median family income for a household with his number of members, then the applicable commitment period is five years. 11 U.S.C. § 1325(b)(4). The Debtors concede that the applicable commitment period here is five years. (Doc. 6).

Next we must calculate the amount of the Debtors' disposable income. "'Disposable income' means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2). Our next task is to determine the Love's "current monthly income."

The term "current monthly income" is defined at 11 U.S.C. § 101(10A), which states as follows:

>The average monthly income from all sources that the debtor
>receives (or in a joint case the debtor and the debtor's spouse
>receive) without regard to whether such income is taxable income,
>derived during the 6-month period ending on–

3

Case 06-10125   Doc 43   Filed 08/31/06   Entered 08/31/06 20:07:50   Desc Main
Document      Page 3 of 10

>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) . . .

One may readily see that the term "current monthly income" is something of a misnomer in that it is historical data and not a projection of the amount of income that the debtor may expect to receive in the future. That is, we find how much the debtor was paid during the six calendar months preceding the date of the petition in bankruptcy and divide by six. In this case, the Love's have reported, in form B22C, that their "current monthly income" is $4,257.47. (Doc. 6). The Trustee does not dispute this figure.

Next we must deduct those expenses which are reasonably necessary to be expended for the debtors' support. Where, as here, the debtors' income is greater than median income for the State, the provisions of 11 U.S.C. § 707(b)(2) apply. The parties here do not dispute that the Debtors' current monthly income is greater than the median income for a family of three in the State of Alabama.[1]

While the provisions of § 707(b)(2) are complex, only one aspect of this provision is in dispute here. The Trustee and the Debtors agree on all aspects of the application of § 707(b)(2) to the facts of this case, except for one. The parties disagree on how "payments on account of secured debts" should be calculated.

---

[1] The amounts for median family income and allowable expenses for food, clothing and the like may be found on the website of the United States Trustee www.usdoj.gov/ust/. The median family income for a family of three in the State of Alabama is presently $50,617l. The Debtors current monthly income is $4,257. That amount multiplied by twelve is $51,084. Therefore, the Debtors current monthly income is greater than the median income for a family of like size in the State of Alabama.

4

## B. PAYMENTS ON ACCOUNT OF SECURED DEBTS

In calculating disposable income, the Debtors are entitled to deduct payments on secured indebtedness.

> average monthly payments on account of secured debts shall be calculated as the sum of–
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition. § 707(b)(2)(A)(iii).

The Debtors have claimed a deduction for payments on debts secured by collateral which they propose to return to the secured parties. The Trustee objects, contending that payments for debts secured by surrendered collateral are not "scheduled as contractually due in the 60 months following the date of the petition." But for the proposed surrender of collateral, the payments in question could be said to be "scheduled." On the other hand, one would not logically schedule payments as contractually due when they will not actually become due as a result of the surrender of collateral.

Referring again to § 1325(b)(1)(B), the debtor is required to pay over all of one's "projected disposable income." The term "projected" contemplates forward looking or future oriented approach.. One would not project or anticipate that a payment would be made on a secured indebtedness where the collateral had been returned. Similarly, a Chapter 13 Plan is necessarily a forward looking document. It is the debtor's proposal as to what he will do in the future to deal with his debts. The term "scheduled" in terms of § 707(b)(2)(A)(iii) also

5

contemplates a forward looking approach. That is, one schedules something which one expects to take place in the future and not an event which one plans to avoid. The terms "scheduled as contractually due" should be interpreted in a way which is consistent with the underlying Chapter 13 Plan as well as the text of the Code. As it is the debtor's plan to surrender certain collateral, payments which will be avoided should not be said to be said to be scheduled within the meaning of § 707(b)(2)(A)(iii). The reading urged by the Debtors here would make the notions of "scheduled" payments and "projected disposable income" inconsistent with the Chapter 13 Plan, the confirmation of which is at issue, as well as the Bankruptcy Code.

### C. THE WALKER CASE

The Code Sections at issue here have been in effect less than one year and for that reason, there is not much reported authority on this question. The Debtors cite a decision recently handed down by the Bankruptcy Court in the Northern District of Georgia. In re: Walker, 2006 WL 1314125; see also, In re Oliver, 2006 WL 2086691 (Bankr. D. Ore. 2006). The Court in Walker was called upon to interpret § 707(b)(2)(iii), in connection with a motion to dismiss a case under Chapter 7 which was filed pursuant to § 707(b) by the U.S. Trustee. The U.S. Trustee contended in Walker that the presumption of abuse arose. The Court in Walker concluded that the debtor could deduct payments on collateral which was to be surrendered, contrary to the interpretation given that provision by this Court, at lest for the purposes of determining whether a Chapter 7 bankruptcy filing is an "abuse" of the provisions of Chapter 7.

6

The Court in Walker states that:

> The surrender of the collateral does not change the fact that the payments are 'contractually due.' When a debtor files the bankruptcy petition, the debtor is contractually due for payments on the outstanding secured debts for the length of the contract. The debtor's contractual liability for the debt is not eliminated upon the surrender of the collateral.

Upon surrender of collateral the debtor is no longer required to make the scheduled installment payments. To be sure, if the secured party has a deficiency owing after the application of the proceeds of the collateral to the indebtedness, an unsecured claim remains, however, there is no longer a secured debt and no payment is due, except for an unsecured deficiency balance, if one remains. Indeed, debtors return collateral to secured parties for the express purpose of lowering their monthly living expenses. The Bankruptcy Code anticipates that this will take place. See, 11 U.S.C. § 521(a)(2)(requiring debtor to file statement as to whether property securing consumer debts is to be retained or surrendered).

The Court in Walker further states that:

> Congress chose to base the means test on historic income and expense figures that are in effect on the petition date, as opposed to figure that may change with the passage of time or with a change in the debtor's lifestyle.

The Court in Walker is correct insofar as the means test is based upon historic income figures. Section 101(10A) clearly indicates that the term current monthly income is the average of the debtor's income for six months preceding the date of the petition. But the language used on the expense side of the equation is all forward looking. The terms "projected disposable

income," § 1325(b)(1)(B), and "scheduled" payments both indicate a forecast of future events and not historic data.

This Court acknowledges that its approach results in a violation of a fundamental accounting principle, that expenses should be matched with income. One may argue that it is illogical to define disposable income using income based upon historical data and expenses on projections of future expenses. The mismatching of historical income figures with future expenses violates the matching principle which underlies accrual accounting. Moreover, one may reasonably argue that it is neither logical or fair to impose this mismatch in performing the means test under § 707(b).

The following hypotheticals illustrates the problem caused by the mismatch. For our first hypothetical, assume that we have a debtor who earns $100,000 per year as a professional. Assume further that he loses his job and is unemployed for six months. During his period of unemployment he receives unemployment benefits of $1,000 per month. While unemployed he falls behind in his debts, accruing $40,000 in various unsecured indebtedness. Fortunately for our debtor he finds another job making $100,000 per year. Two weeks after finding his new job, he files bankruptcy to discharge his unsecured indebtedness. Under these facts, the debtors' current monthly income is only $1,000, notwithstanding the fact that he is earning a salary of $100,000 per year.

In a second hypothetical, our debtor makes $100,000 and again loses his job. He finds another job making $25,000 per hear. Unfortunately, circumstances do not permit him to hold out for six months to allow and he needs to file bankruptcy immediately. Under the facts of this second hypothetical, the debtor's current monthly income as defined in 11 U.S.C. § 101(10A) is

$8,333, but he is only earning gross wages of $2,083. The debtor's disposable income calculation would assume that he has far more income than is actually available, resulting in an injustice to debtors who have recently experienced a rapid and substantial decrease in their earnings–not an uncommon occurrence for debtors who file bankruptcy.[2]

The Court in Walker candidly concedes the logical fallacy of its approach. "The fact that the debtor's deduction of secured debt payments for debts that will not be reaffirmed does not produce an accurate picture of the debtor's post-petition financial condition." The Court in Walker justifies its approach contending that it is mandated by the plain language of the statute. As discussed above, the language § 1325(b)(1)(B) and § 707(b)(2)(A)(iii) is quite clearly forward looking, effectively undercutting the rationale in Walker.

### III. CONCLUSION

As a result of the problems with the drafting of § 707(b), logical inconsistencies in its application to real life situations are inevitable. The Court in Walker dealt with this problem by matching historical income with historical expenses, which is admittedly a logical solution. However, it does violence to the plain language of the statute where we have terms such as "projected disposable income" and "scheduled" payments, both which contemplate a forward looking approach. Moreover, a Chapter 13 Plan is necessarily a forward looking document. For this reason, in this Court's view, it is better to stay true to the language of the Code and to remain

---

[2] One might argue that the injustice under this hypothetical may be addressed under the "special circumstances" provision of § 707(b)(2)(B). Whether the "special circumstances" exception to the means test presumption will allow sufficient flexibility remains to be seen.

9

Case 06-10125   Doc 43   Filed 08/31/06   Entered 08/31/06 20:07:50   Desc Main
                Document      Page 9 of 10

consistent with the Chapter 13 Plan and accept the logical inconsistency of matching historical income with future expenses.

      Done this 30th day of August, 2006.

                                           /s/ William R. Sawyer
                                           United States Bankruptcy Judge

c: Michael D. Brock, Attorney for Debtor
   Curtis C. Reding, Trustee